# Schuler *v.* Schuler, Appellant.

*Equity — Jurisdiction—Legal title—Demurrer—Answer—Easement—Contract.*

1. A demurrer to a bill in equity admits the material facts averred in the bill, and where such facts show a legal title in the complainant it is not a prerequisite to the enforcement in equity of equitable rights incident thereto that the complainant's legal title be established in an action at law.

2. The jurisdiction of a court of equity to restrain or prevent the permission or continuance of acts contrary to law and prejudicial to the rights of individuals as applied to a bill to restrain the obstruction of an easement, is not ousted by an answer denying the plaintiff's legal right.

3. Where two landowners enter into an agreement in writing relating to the flow of surface water, and there are reciprocal covenants, and a dispute arises as to the construction of the instrument, but there is no dispute as to any extrinsic fact affecting its construction, a court of equity has jurisdiction to determine the construction of the instrument.

4. Where in such an instrument it is agreed that one of the parties shall have the right to flow the surface water as it has been wont to flow for many years, without any provision making such right conditional, the inference is that the parties intended the right to vest at once; and this inference is not weakened by a covenant of the party securing the right, to fill up all gullies and ditches washed out by the waters caused by the falling of rain or the melting of snow on his own premises then existing, or that might thereafter be washed out, so as not to increase the flow of said waters of the defendant's premises, for any unreasonable length of time. The obligation to fill the gullies is a continuing one.

Argued Dec. 10, 1908. Appeal, No. 156, Oct. T., 1908, by defendant, from decree of C. P. Lehigh Co., Jan. T., 1907, No. 1, on bill in equity in case of Lewis L. Schuler v. Peter A. Schuler. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Bill in equity for an injunction.

Trexler, P. J., filed the following opinion:

Lewis L. Schuler and his brother, Peter A. Schuler, are the owners of adjoining lands in Lower Milford township, Lehigh

county. What may be called the upper field of Lewis Schuler drains into a gully, which is situate along the fence line running east and west, and which gully or gutter continues on Peter A. Schuler's land, and the water finally flows over sprout land of Lewis L. Schuler.

The drainage had been a matter of contention between the parties for some time and finally became a matter of litigation, which was settled in writing, dated January 17, 1906.

In said agreement, Peter A. Schuler rceognized Lewis L. Schuler's right to flow surface water collected from the rainfall on the upper field through the gully along the line fence, as the same was wont to flow for many years, clear of any and all obstructions. Peter A. Schuler agreed to remove all obstructions placed in the aforesaid ditch or drain and repair the banks of said ditch so that the water flows from the same freely and unobstructedly.

His brother, Lewis L. Schuler, the owner of the upper field, agrees to fill up the gulleys and ditches washed out by the water caused by the rainfall in the upper field so as not to increase the flow of said waters over the lands of Peter A. Schuler for any unreasonable length of time.

We need not concern ourselves about the situation of affairs prior to the making of this agreement. This agreement was the settlement of a lawsuit, was for a consideration and is binding upon the parties.

After the agreement was made, Peter A. Schuler did not remove the obstruction from the gutter, and by reason of the gutter not being opened, the water was diverted and instead of flowing along the whole length of Peter Schuler's field and thence into the waste land of Lewis Schuler, it only went a certain portion of the way and then flowed upon the arable land of Lewis Schuler and caused considerable damage.

Peter Schuler's excuse for not complying with the agreement is, that Lewis Schuler did not fill up his gullies. It will be noticed that the agreement requires Peter Schuler to remove the obstruction in the aforesaid ditch and repair the bank of the said ditch so that the water will flow through the same unobstructedly. It was a present condition which could be remedied by

Peter Schuler at once. On the other hand, Lewis Schuler's filling up of the gullies caused by the rain on his land were to be filled up by Lewis Schuler so as not to increase the flow of said water on the premises of Peter A. Schuler for any unreasonable length of time.

It is apparent that in a field that is under cultivation entry cannot be made at any time for the closing up of gullies; such work must be done at such times of the year when the situation is adapted for it and the crop upon the field has been harvested. Whilst the agreement is likely to be the cause of constant friction between the parties and it is to be regretted that the matter cannot be ended at one stroke, still we must treat the conditions as they are.

To my mind, Peter Schuler is clearly in the wrong. He failed to comply with his part of the agreement, whilst Lewis performed his, and without further consideration, I think the plaintiff is entitled to the relief sought for.

It is argued by the defendant that it is impossible for Lewis Schuler, the plaintiff in this case, to keep the gullies in the upper field so as not to increase the flow of water over the lands of Peter Schuler, and that, therefore, the agreement being impossible to be performed, binds neither of the parties. To this view, I cannot assent. The agreement did not contemplate that if Lewis Schuler should fill up all the gullies and ditches in his upper field that that would remedy the flow for all time to come. His duty, under the premises, is a continuing one, and whilst it may be impossible to fill up the gullies in such a manner that they will not again be made by the washing of water, still it isn't impossible to fill them up from time to time when they occur.

The question of recompensing the plaintiff is also involved in the question. It appears by the testimony of witnesses that the plaintiff is seriously damaged, but the witnesses do not agree as to the exact amount. Considering the area damaged, we can arrive at a proper amount. I think $125 would recompense Lewis L. Schuler for the damage done.

*Error assigned* was the decree of the court.

*Milton C. Henninger,* with him *George M. Lutz,* for appellant. —The easement of the plaintiff granted in the said agreement to flow the water from his field over the field of the defendant is dependent upon the performance of certain agreements upon the part of the plaintiff: Rhea v. Forsyth, 37 Pa. 503; North Pennsylvania Coal Co. v. Snowden, 42 Pa. 488; Grubb's App., 90 Pa. 228; Norris's App., 64 Pa. 275; Pitcairn v. Pitcairn, 201 Pa. 368.

The court had no jurisdiction: Norris's App., 64 Pa. 275; O'Neill v. McKeesport, 201 Pa. 386; Washburn's App., 105 Pa. 480.

The general rule of law is that a party who invokes equity must do so with clean hands and must do equity: Datz v. Phillips, 137 Pa. 203.

The cases in Pennsylvania are numerous which decide that where covenants are mutually dependent, a plaintiff must show full performance on his part, or a willingness so to perform before he can hold a defendant on his covenants: Murray v. Iron Hall, 9 Pa. Superior Ct. 89; Fisher v. Mershon, 9 Pa. Superior Ct. 238; Easton v. Jones, 193 Pa. 147; Morrow v. Waltz, 18 Pa. 118.

*Claude T. Reno,* with him *Clinton A. Groman* and *James L. Schaadt,* for appellee.—The appellant seeks to compel appellee to establish his rights at law. The answer is, that there is no such necessity inasmuch as the rights of both appellee and appellant are definitely settled and established by the agreement in suit: Wilson v. Cather, 214 Pa. 3.

OPINION BY RICE, P. J., July 14, 1909:

In order to sustain the demurrer the defendant was bound to sustain the general proposition that a court of equity has no jurisdiction to restrain the disturbance of an alleged easement until the plaintiff's right has been established in an action at law. We say this, not because counsel expressly argue that this is the general rule, but because it would be the logical conclusion from holding that this bill was demurrable. Upon the facts admitted by the demurrer, the right of the plaintiff to have

the water flow as it had flowed for fifty years (so alleged in the bill) and as the defendant agreed that it should be permitted to flow in the future, was clear. If upon such a state of facts as is alleged in the bill the right of the plaintiff must be established in an action at law before he can invoke the aid of a court of equity, there is no state of facts to which the rule would not apply. But there is no such general rule. A demurrer to a bill in equity admits the material facts averred in the bill, and where such facts show a legal title in the complainant it is not a prerequisite to the enforcement in equity of equitable rights incident thereto that the complainant's legal title be established in an action at law: Bitting's Appeal, 105 Pa. 517. This is all that need be said in support of the action of the common pleas in overruling the demurrer.

Nor is the jurisdiction of the courts of equity to restrain or prevent the commission or continuance of acts contrary to law and prejudicial to the rights of individuals, as applied to a bill to restrain the obstruction of an easement, ousted by an answer denying the plaintiff's legal right. The idea was thus expressed in Miller v. Lynch, 149 Pa. 460: "It is not enough for the defendant to deny the plaintiff's right; his denial must be based upon facts which show a substantial dispute." If upon the proofs adduced at the trial it appears that no fact essential to the establishment of the plaintiff's legal right is wanting, or is in substantial dispute, an equity based on that right may be asserted and a decree for equitable relief made.

It appears in the present case that the plaintiff began an action at law in which the dispute as to his legal right would have been adjudicated, if the action had been prosecuted to trial and judgment. But the parties saw fit to settle the dispute, and thus end the litigation, by a written agreement, in which the plaintiff's right to flow the surface water collected from the fall of rain and the melting of snow on his premises upon the adjoining land of the defendant, along the line fences between their respective properties, "as the same was wont to flow for many years," free and clear of obstructions erected or caused to be erected by the defendant, his heirs and assigns, was unequivocally agreed to, if not distinctly recognized as a pre-

viously existing right. There is no dispute as to the execution of this instrument, or as to its terms, and no allegation that it has been rescinded or annulled. There is a dispute as to its construction, but there is none as to any extrinsic fact affecting its construction, and therefore there is no occasion for remitting the plaintiff to an action at law to determine its construction, and there would be no propriety in doing so. The question then arises whether the vesting of the right to have the water flow as it had been wont to flow was dependent upon the prior performance by the plaintiff of what he covenanted to do. This question is to be determined by inferring, with as much certainty as the case permits, the meaning and purpose of the parties from a rational consideration of the whole instrument and the subject-matter of the agreement: 2 Parsons on Contracts, 529. The declared purpose of the instrument was to carry into effect the amicable adjustment the parties had made of the differences that had recently existed between them as to the plaintiff's right to flow the surface water as it had been wont to flow for many years. Their evident intention was to settle that question finally and to avoid any dispute regarding it. Hence, when they agreed that the plaintiff "shall have the right," without expressly making it conditional, the reasonable inference is that they intended it to vest at once. This inference is not weakened by the plaintiff's covenant to fill up all gullies and ditches washed out by the waters caused by the falling of rain or the melting of snow on the plaintiff's premises, then existing or that might thereafter be washed out, so as not to increase the flow of said waters on the defendant's premises for any unreasonable length of time. The learned judge below well says: "The agreement did not contemplate that if Lewis Schuler should fill up all the gullies and ditches in his upper field that would remedy the flow for all time to come. His duty, under the premises, is a continuing one, and whilst it may be impossible to fill up the gullies in such a manner that they will not again be made by the washing of water, still it is not impossible to fill them up from time to time when they occur." Properly interpreted this is a continuing covenant on the part of the plaintiff not to permit an increase of the flow of

water for an unreasonable length of time by leaving gullies as they are caused from time to time unfilled, but the performance of this continuing obligation was plainly not intended as a condition precedent to an immediate vesting of the easement which he here asserts. We conclude that no fact essential to the establishment of the plaintiff's legal right is lacking or is in substantial dispute under the proofs, and therefore that the court had jurisdiction to decree equitable relief, unless for equitable reasons the plaintiff was not in position to demand it.

But although the fact of the plaintiff's easement was clearly established, the court was not bound to go to the full extent of decreeing specific performance of the defendant's subsequent covenant to remedy certain conditions existing at the time of the agreement, if the plaintiff was in default in filling up the gullies then existing on his own land. In such a case, although in a court of law the covenants would be held to be independent, yet a court of equity might well refuse to decree specific performance of the covenant last referred to: Datz v. Phillips, 137 Pa. 203. It is unnecessary, however, to go into an extended discussion of this question, because the learned judge has found that the plaintiff filled the gullies and ditches on his land, and at the date of suit brought was not in default in respect of that obligation. Having regard to the nature of his covenant, as heretofore explained, we are unable to agree with the appellant's counsel that there was not sufficient evidence to sustain this finding. As to the effect to be given to such a finding of the trial court we refer to the cases cited in Davis v. S. W. Penna. Pipe Lines Co., 34 Pa. Superior Ct. 438 at page 442. We repeat in conclusion, what has been distinctly intimated heretofore, that the fact that the plaintiff is not presently in default will not relieve him from the continuing obligation to fill the gullies as they occur so as to prevent an increase of the flow of water for an unreasonable length of time.

The decree is affirmed at the costs of the appellant.