DOUGLAS *v.* JORDAN.

1. EASEMENTS—WAY OF NECESSITY GRANTED BY IMPLICATION.
    Where the owner deeded an island which could not be reached except over the land of the grantor or by purchase of a way over lands of others, a way of necessity across the land retained by the grantor was granted by implication.[1]

2. SAME—RIGHT OF WAY ONCE FIXED MAY NOT BE CHANGED WITHOUT CONSENT OF ALL PARTIES.
    When a right of way has once been fixed by the consent of the owners of the dominant and survient estates it

[1] Easements, 19 C. J. § 117.
On easements created by severance of tract of land with apparent benefits existing, see notes in 26 L. R. A. (N. S.) 315; L. R. A. 1915C, 345.

cannot be altered by either party without the consent of the other.[2]

3. SAME—ACTS OF PARTIES FIXED RIGHT OF WAY.

Where the grantor and the grantees of the island fixed upon a way over the grantor's remaining land by user and by constructing a bridge from the island to the mainland to connect therewith, neither said grantor nor his subsequent grantee with notice had the power to change the way without the consent of the grantees of the island.[3]

4. SAME—COURT OF EQUITY MAY ESTABLISH WAY IF PARTIES UNABLE TO AGREE.

If the grantor and grantee of inaccessible land are unable to agree on a way, a court of equity has power to designate a convenient way, but when a way has once been fixed by the parties, a court of equity may not, thereafter, upon the application of the grantor or his grantee of the servient estate, change the way.[4]

5. SAME—PURCHASER OF SERVIENT ESTATE WITH NOTICE TAKES SUBJECT TO EASEMENT.

One who purchases land with notice, actual or constructive, that it is burdened with an existing easement, takes the estate subject to the easement, and he has no greater right than his grantor to prevent or obstruct the use of the easement.[5]

6. SAME—PURCHASER OF SERVIENT ESTATE HELD TO HAVE HAD NOTICE.

Where the grantee of land knew that the purchasers of an island had no way thereto except over the land he was buying, and that they had built a bridge from the island to the mainland to connect with said way, which they were using, he had constructive notice of their rights and was in no sense an innocent purchaser.[6]

Appeal from Crawford; Smith (Guy E.), J.  Submitted June 12, 1925.  (Docket No. 1.)  Decided October 1, 1925.

Bill by Thomas E. Douglas against Ellsworth W. Jordan and another to enjoin the rebuilding of a bridge

---

[2]Easements, 19 C. J. § 216; [3]Id., 19 C. J. §§ 213, 216; [4]Id., 19 C. J. § 214; [5]Id., 19 C. J. § 145; [6]Id., 19 C. J. § 146.

and the use of a way over plaintiff's land.    Defendants filed a cross-bill for affirmative relief.    From the decree rendered, defendants appeal.    Reversed, and decree entered for defendants.

*E. M. Harris* (*George L. Alexander,* of counsel), for plaintiff.

*George W. Cook,* for defendants.

Wiest, J.    John B. Redhead owned land in Crawford county along the Au Sable river.    Over 20 years ago he opened a way over his land from the public highway to his home and a shingle mill he operated for a time.    This way was used by a person to whom he sold a parcel of land and, to some extent, kept in repair by persons having occasion to use it, and for several years a public school was located thereon.    The public authorities never worked the way and, although it was frequently used by campers, sightseers, fishermen and pleasure seekers, it did not become a public highway.    Included in one of Mr. Redhead's holdings was a three-acre island in the Au Sable river, opposite the land he sold to plaintiff.    In August, 1919, Mr. Redhead sold the island to defendants for a summer home, making no mention of right of way to reach it.    Defendants have since made the island their summer home and have improved it.    The way maintained by Mr. Redhead over his land, and used by another of his grantees, was along and near the river bank, opposite the island, and defendants, wanting to use such way and have means of reaching their island from the public highway, in the summer of 1920, built a bridge from the island to Mr. Redhead's land at a convenient point to connect with the apparent and long-existing way.    This was agreeable to Mr. Redhead who recognized the right of defendants to a way over his land to their island, and he acquiesced

in the location of the bridge and assisted in its construction.    Defendants used the bridge and way across Mr. Redhead's land in 1920 and 1921.    High water damaged the bridge in the spring of 1922, leaving, however, the center stone-filled crib.    When the bridge was out, and in April, 1923, plaintiff purchased from Mr. Redhead the land opposite the island. At the time of his purchase plaintiff knew of this way along the river bank, that it had existed for upwards of 15 years, was used by the owners of the island, and the owner of another parcel to whom Mr. Redhead had sold, and knew of the existence of the bridge. This knowledge led plaintiff to inquire of Mr. Redhead whether he had given defendants any rights in the property he was purchasing, stating that if he had he did not want the property, and claims he was informed by Mr. Redhead that no rights had been given defendants.    Plaintiff thereupon searched the records to see if there was any grant of rights to defendants, found none and made the purchase.    In the summer of 1923 defendants started to rebuild the bridge at the old location, and this bill was filed by plaintiff to restrain its rebuilding and use of the way.    At the hearing plaintiff offered to consent to the construction of a bridge from the island to the quarter line of his property.    At that point, however, the river bank of plaintiff's land is about 14 feet above water level, and the land on the island opposite is low, and abutments would have to be built on the island approximately 14 feet high, and the bridge at such point would be 185 feet long; while the bridge at the old location was only 75 feet long and the abutments 4 or 5 feet high.    Defendants, by answer, asserted right of way to their island over the land then owned by Mr. Redhead, and now owned by plaintiff, by necessary implication in their deed from Mr. Redhead, and location of right of way by subsequent

agreement with Mr. Redhead and user of the same to the knowledge of plaintiff at the time of his purchase, and asked that plaintiff be restrained from preventing them from using such way along the river bank. From a decree restraining the rebuilding of the bridge at the old location, and the use of the way along the river bank, and granting defendants right to construct a new bridge at the location consented to by plaintiff at the quarter line, defendants appealed.

Mr. Redhead's deed to defendants granted, by implication, a way of necessity across the land he retained. *Moore* v. *White,* 159 Mich. 460 (134 Am. St. Rep. 735); *Bean* v. *Bean,* 163 Mich. 379; *Gilfoy* v. *Randall,* 274 Ill. 128 (113 N. E. 88). This implication is one of necessity, for the island, without a way thereto, could not be reached by the grantees except over the land of their grantor, or by purchase of a way over lands of others.

In *Gilfoy* v. *Randall, supra,* it was held, quoting from the syllabus:

"Where the owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor."

The law, therefore, required a right of way to be accorded by Mr. Redhead, either by designation of a convenient way, or by agreement. When the right so impliedly granted has been once fixed by the consent of the owners of the dominant and servient estates it cannot be altered by either party without the consent of the other. *Powers* v. *Harlow,* 53 Mich. 507 (51 Am. Rep. 154); *Jennison* v. *Walker,* 11 Gray (Mass.), 423; *Nichols* v. *Luce,* 24 Pick. (Mass.) 102 (35 Am. Dec. 302).

We are persuaded that Mr. Redhead and defend-

ants fixed upon the way, as it then existed, across Mr. Redhead's lands, by construction of the bridge and user of the way, and so placed it beyond the power of Mr. Redhead, or his grantee, to change the way without the consent of defendants. Mr. Redhead, in the first instance, had a right to designate a convenient way across his lands or to agree upon the way with defendants. If a grantee is not content with a way designated by his grantor, and an agreement cannot be reached, a court of equity has power to designate a convenient way, but, when a way has once been fixed by the parties, capable of making such a determination, a court of equity may not, thereafter, upon the application of the grantor, or of his grantee of the servient estate, change the way and require the owner of the dominant estate to accept any other way in substitution thereof.

When plaintiff purchased he was aware that a bridge had been built to provide a way from the island to the open way across the property purchased, and he is bound by the way so used to the same extent his grantor was bound thereby. *Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14. See, also, *Lever* v. *Grant,* 139 Mich. 273; *Ives* v. *Edison,* 191 Mich. 461.

It is stated in 19 C. J. p. 939:

"One who purchases land with notice, actual or constructive, that it is burdened with an existing easement, takes the estate subject to the easement. * * * He has no greater right than his grantor to prevent or obstruct the use of the easement."

Plaintiff knew the lay of all this land, was aware of the bridge, its purpose and use, knew of the way it led to from the island and had actual notice of the rights of defendants, but evidently thought such rights could be cut off if not expressly granted by terms in a deed or of record in some form. Defendants'

rights came to them by deed and were rendered certain and measured by subsequent selection of the way. Plaintiff knew, at the time of his purchase, the defendants had no way to their island except over the land he was buying. If plaintiff knew no more than this he had constructive notice of the rights of defendants and was in no sense an innocent purchaser. *Higbee Fishing Club* v. *Atlantic City Electric Co.,* 78 N. J. Eq. 434 (79 Atl. 326). The right of defendants to a way, their use of a long-existing way across the lands of Mr. Redhead, with his acquiescence and active co-operation in rendering the same available, fixed and established such way as one of right under implied grant in their deed, and is in no sense a mere license revocable at the will of their grantor, or ended by his grant of the servient estate to plaintiff.

Under the evidence we must hold that the way was fixed by Mr. Redhead and defendants; that plaintiff, when he purchased from Mr. Redhead, was aware of this way and of the rights of defendants; and the court had no jurisdiction to decree a different way. It follows that the decree entered should be reversed and plaintiff's bill dismissed, and upon defendants' answer, claiming affirmative relief, that plaintiff be enjoined from interfering with the rebuilding of the bridge and defendants' enjoyment of the way over his land. Such a decree will be entered, with costs to defendants.

MCDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J. (*concurring*). There can be no question, I think, under our holdings cited by Mr. Justice WIEST, but that the deed from Redhead to defendants granted them, by implication, a right of way by necessity across the land he retained. Counsel for plaintiff, however, insist:

232—Mich.—19.

"It is the right of the owner of the land burdened with such easement to choose the location thereof."

And further:

"And the convenience of and expense to the grantee does not in any way control."

The authorities cited by them lend strong support to this claim. Their application, however, is dependent upon the further contention that "in this case a location of the easement was never made."

The defendants obtained their deed in 1919. Ellsworth Jordan testified:

"Later Mr. Redhead and I agreed on the present location of the bridge. * * * We decided on this particular location, because it would be more accessible and with less expense to get on my island."

Redhead testified:

"He selected the place himself for it, but he expected as a matter of course that he could have his bridge. He did not actually ask permission. I joked him one day about it, and he saw wherein he was in error. We then made up then and there that he should have free passage through there with the privilege of landing the bridge on the main land; that is how it came about."

It also appears that Redhead assisted Jordan in constructing the bridge. It led to a trail across Redhead's land which he had used for many years in gaining access to his buildings from the highway several miles distant. Were Redhead now seeking to enjoin the construction of the new bridge, it is clear that he would have no standing in a court of equity.

Is the plaintiff chargeable with notice of the rights of defendants in this respect? He had personal knowledge that defendants were occupying the island and had made improvements thereon. He admits that he knew Jordan had built a bridge in 1919, and saw it "before it was washed out." The possession

of the island by Jordan, to which access could be had only by a bridge, and the building of the bridge at the location where it is now sought to construct the new one, were facts which in my opinion imposed on plaintiff at the time of his purchase the duty to make inquiry of Jordan as to his rights.   He was not justified in relying on what Redhead told him.   He evidently realized that what Jordan had done was an indication that he had rights.   ·He sought to satisfy himself about it by asking Redhead and consulting the county records.   I concur in the conclusion reached by Mr. Justice WIEST that as to defendants' rights he cannot be said to be an innocent purchaser without notice.