**CINCINNATI & SUBURBAN BELL TELEPHONE CO v BECHTEL et**

Ohio Appeals, 1st Dist, Hamilton Co

No 4483. Decided Feb 5, 1934

702

Frost & Jacobs, Cincinnati, for plaintiff.

R. E. Simmonds, Jr., Cincinnati, Jerome Goldman, Cincinnati, and Wm. Mortashed, Cincinnati, for defendants.

## OPINION

By ROSS, J.

The first question requiring decision is:— Does the placing of telephone equipment, such as poles, cross-arms, and wires, upon the highway increase the burden of the easement of the state in the property of the defendants, that easement being confined to highway purposes only? We conclude that the question has been definitely answered for us by the Supreme Court in the case of **The Ohio Bell Telephone Co. v The Watson Co., 112 Oh St, 385,** the syllabi of which case are as follows:

"1. In this state the fee to the country highway is in the abutting owner, and the public has only the right of improvement thereof and uninterrupted travel thereover.

"2. An owner of land abutting upon a country highway, whose title extends to the center of the road along the side of which are located shade trees, has a property right in such trees, and the same may not be interfered with, unless by consent of such owner or first making compensation according to law. (Daily v State, 51 Oh St, 348, 37 NE, 710, 24 L.R.A., 724, 46 Am. St. Rep., 578, followed not approved).

"3. The erection and maintenance of telephone poles and wires within the limits of a country highway is an additional burden upon the easement and an invasion of the property rights of the abutting owner, for which he is entitled to compensation.

"4. Where along a rural highway a telephone company has erected poles, done necessary cutting and trimming of a shade tree to permit the placing of telephone cables on said poles, such construction, however, not interfering with the access, light and air of the adjoining owner, but being without the consent and against the protest of such owner, an injunction will be granted at his instance restraining the further construction of such telephone line and requiring the removal of the poles and cables already in place, unless compensation shall be made to such owner or his consent obtained."

Counsel for plaintiff in a most thorough and able brief have endeavored to distinguish this and other similar decisions upon the ground that they are based upon a showing of actual interference with the use of the property of the abutting owner. This factor may have been in the minds of the courts, but the language used in the syllabi and opinions is not such as to limit them to this element, and in any event the demurrer in the instant case must be taken to admit that some damage is sustained by the defendants.

We think that the conception that it is necessary to show special or actual damage beyond the infringement of the rights of property of the defendants caused by the mere placing of the poles and wires is erroneous, in that it is probably very difficult at the present time to tell what proper use the defendants may in the future wish to make of their property. It having been held that the use by the Telephone Company of the highway by placing therein their poles is an additional burden and therefore in direct conflict with the rights of the defendants in the fee. Such use if it be permitted, simply because no irreparable injury be shown, will in the course of time ripen into a prescriptive right, and the defendants will in the future be met with the same arguments that are now advanced for continuing and enlarging the easement claimed by the Telephone Company.

As the law now is, a court of equity can not lend its aid or withhold its hand if, by doing so, the owner of property is caused thereby to be deprived of a substantial right, which loss in the future may be a serious and definite impairment of the full use of his property. Such a present infringement embodying serious potential injury cannot be considered trivial damages.

A second contention is now considered, namely—that the Telephone Company having by occupation of the highway for more than twenty-one years acquired a prescriptive right to continue to occupy it, it may now change the location of its poles to the new edge of the highway, without subjecting itself to liability for compensation, although such new location is in a portion of the highway newly acquired by grant from the abutting owner of the fee. This contention is not supported by the authorities. We quote from 9 R.C.L., p. 792, et seq., §§49-50—"Easements."

"Where an easement granted in indefinite terms has been once selected and located, its location cannot be changed by either the owner of the land or the owner of the easement without the consent of the other party, for it would be an incitement to litigation to treat such an easement as a shifting one, and would greatly depreciate the land on which it is charged and discourage its improvement. Following this rule a definite location has been held to determine and limit the rights of the grantee, so that he cannot exercise his option again. And, on the other hand, it has been held to be binding upon the grantor, so that he has no right to hinder the grantee in the exercise of his right, or to compel the grantee to accept another location, although it may be equally convenient with the right or privilege originally granted. However, a selection by the grantor is not conclusive if it is a palpable abuse of the right granted. Of course, the grantee of an easement may shift the location, if the deed so authorizes; but it has been held that a right to "alter, repair, or renew" does not give authority to change the location. A way by prescription, which runs in a defined course to a fixed point, is no more subject to variation by parol agreements, or by acts and conduct, than if it had been created and so described by deed. Although neither the grantor nor the grantee has any right by himself to change a location of a way once established, it may be changed with the consent of both parties, and if, after such change, the grantee has used another way for a length of time, his acquiescence in the change will estop him from again claiming the old route."

"Where a private way has become impassable or unfit for suitable passage, a grantee cannot, without becoming a trespasser, go upon the adjoining land, and thus pass around the obstruction. It is his duty to keep his way in repair, and the failure to perform this duty is no justification for imposing a greater burden on the owner of the servient tenement. The fact that the entrance to his established way has become useless, owing to a lawful change in the grade of a public highway, does not entitle him to use another way over the servient lands. If, however, the way has become impassable because of the act of the owner of the soil in placing obstructions thereon, there is no reasonable necessity for leaving the owner of the easement to the inadequate remedies of his own removal of the obstruction and a suit for damages. In such case it is the prevailing rule that he may pass over the adjoining land, so far as is necessary to avoid the obstructions, taking care to do no unnecessary damage. This rule is founded upon a

fundamental principle of the common law, namely, that a man shall not be heard to complain of an injury which is the direct and necessary result of his own illegal act. However, in some jurisdictions this rule has been denied, the courts holding that the only remedy of the owner of the easement under such circumstances is to remove the obstructions and sue for damages."

In the case of **Ghaster v City of Fostoria et, 115 Oh St, 210,** the first paragraph of the syllabus is:

"Where a steam railroad is located in and along a street near the center thereof, and the city, through its council, determines to relocate the line of said railway and place the same so near to the property line of an abutting owner that trucks and other delivery vehicles standing or passing along said premises would be struck by passing trains, such change of location results in an obstruction to and interference with access to such property, and is a "taking of private property" for public use, and the property owner is entitled to first have compensation in money, or to be secured by a deposit of money for such taking before such relocation is made, the same to be assessed by a jury."

See also: Douglas v Jordan et, 232 Mich., 283, 41 A.L.R., 1437, p. 1440:

"When the right so impliedly granted has been once fixed by the consent of the owners of the dominant and servient estates, it cannot be altered by either party without the consent of the other. Powers v Harlow, 53 Mich. 507, 51 Am. Rep. 154, 19 NW 257; Jennison v Walker, 11 Gray, 423; Nichols v Luce, 24 Pick. 102, 35 Am. Dec. 302."

In the case of Babcock et v Gregg, 55 Mont., 317, the first paragraph of the syllabus is:

"A right acquired by prescription to maintain a ditch over property of another is no more subject to variation than one created by deed, and therefore does not carry with it the right to enlarge the ditch, change its course materially, or make a new ditch over the land."

It is apparent that the change in location of the poles in the instant case is not made necessary by any act or omission of the defendant owners.

The holding in the case of Telephone Co. v Watson, supra, places the plaintiff in the same position as if no highway were involved, and the change of the location of the poles therefore comes directly within the purview of the authorities herein noted as to the change in the location of easements.

The plaintiff contends that by the provisions of §§1178, 9170, 9180, 9191, GC, it is given authority to maintain its equipment in the county road subject to the requirement to place the same according to direction of the State Highway Department with which orders it must comply.

Our duty is to choose from alternative constructions one which will sustain the constitutionality of the sections if possible. They may be construed as not embodying an intention to violate the provision of the constitutional inhibition against the taking of private property for public use without compensation and due process of law. We consider that this legislation was intended to be so limited and is therefore constitutional.

These statutes were passed for the purpose of maintaining a proper adjustment of the rights of the public in the highway and the rights of the public utility in the enjoyment of its easement after it has been secured in a proper and legal way. They do not provide an unconstitutional method of securing an easement. It is our conclusion, therefore, that the demurrer of the plaintiff to the answer and cross-petition of the defendants must be overruled.

An entry may be presented accordingly.

HAMILTON, PJ, and CUSHING, J, concur.