RICHARD PAUL, INC., a corporation of the State of Delaware,

*vs.*

UNION IMPROVEMENT COMPANY, a corporation of the State of Delaware.

*New Castle, March 5, 1952*

*W. Thomas Knowles,* of Knowles & Allmond, for plaintiff.

*E. Ennalls Berl* and *James L. Latchum, Jr.,* of Berl, Potter & Anderson, for defendant.

BRAMHALL, Vice Chancellor: Plaintiff, on the twenty-eighth day of February, 1951, leased from defendant, the basement and first and second floors of a four-story building located at the southeast corner of Ninth and Walnut Streets, Wilmington, Delaware. One of the pertinent provisions of the lease is the following:

"Together with an airway of approximately twenty feet surrounding said building (reserved, however, for ingress and egress to the third and fourth floors, the use of said airway, the necessary stair-

ways, and the use of the elevator to the lessor, its tenants, officers and agents)."

Two other leases between the parties, the first of which was executed in the year 1942, also contained a similar provision. At the time of the execution of the original lease in 1942, and continuing thereafter up to the present time, there was a twenty foot open space extending on the south and east sides of the building in question, with an entrance thereto from both Ninth Street and Walnut Street, used by the occupants of said building as a driveway. The two upper floors were rented by defendant to another tenant with the use of the facilities of the building, including heat. Subsequent to 1942 and continuing up to the present time the way has been used by the plaintiff and the other lessee as a driveway and parking space. Plaintiff was and is engaged in the manufacture of an article known in the trade as "Peds." Most of its products were shipped daily by parcel post, being delivered from the place of business of plaintiff to the post office in a station wagon. The testimony of plaintiff's driver was to the effect that his practice was to enter the driveway on the Ninth Street side and drive up to the loading platform on the south side of the building and then proceed out into the street by the Walnut Street entrance. If the truck of the other lessee was at the loading platform at that time, plaintiff's driver would turn his truck at the corner of the driveway on the southeast side of said building, back up his truck at or near the loading platform, and after being loaded he would proceed out into the street by the Ninth Street entrance. There was some testimony offered by defendant showing that at times the Walnut Street entrance was used exclusively.

The defendant is and was also the owner of an adjoining tract of land to the east and south of the building used by the plaintiff and the other lessee. At the time of the original lease, and continuing up until shortly before the institution of these proceedings, there was a high wire fence adjoining said driveway on the south and a number of private garages

and wooden fences on the east. Shortly prior to the institution of this suit plaintiff improved the ground to the east of the building occupied by the plaintiff by tearing down the garage buildings and wooden fence, laying a hard surface on both the ground of defendant to the east of the building occupied by the plaintiff and including the entire driveway used by the plaintiff, and erecting a short fence with a gate on the south side of said driveway at the southeast corner. Defendant further closed the entrance on the Ninth Street side of said driveway and installed a high wire fence in place thereof. There are two fire escapes on the east side of said building and one on the south side, one of said fire escapes being a short distance from the Ninth Street entrance. Plaintiff's manager testified that plaintiff had no knowledge that defendant intended to place a gate at the southeast corner of said building or a fence at the Ninth Street entrance until he saw defendant's employees erecting the same and that objection thereto was immediately made to defendant. Plaintiff then proceeded by this action to ask this court to remove the fence, gate and to replace the fence on the east side of the driveway of said building.

The questions involved are:

1. What are plaintiff's rights relative to the use of the way?

2. Were plaintiff's rights violated by the action of defendant?

3. Is plaintiff entitled to an injunction compelling defendant to remove the alleged obstructions?

1. What are plaintiff's rights relative to the use of the way?

Plaintiff contends that the word "airway" as used in the leases, was ambiguous and should be construed. Plaintiff further contends that from a reading of the leases as a whole and from the construction placed upon the word by the parties, the word "airway" should be interpreted as mean-

ing "driveway." The meaning of the word "airway" is usually literally defined as a "passage through the air." *Webster's New International Dictionary*. To interpret the word "airway" as meaning "driveway," which is commonly interpreted as a passageway over the ground, would, it seems, be somewhat strained. However, since my decision in this case is not based upon the interpretation of this word, I shall not attempt further to construe it.

The premises occupied by the plaintiff were used for manufacturing purposes. Other than the use of the word "airway," there is no provision in any of the leases as to any way given to plaintiff. However, at the time of the execution of the original lease in 1942, and prior thereto, there was a twenty foot open space on the south and east side of said building, used as a driveway, being open at both ends, e. cept by gates, and there was an entrance for loading on the south side of said building.

It is conceded by defendant that plaintiff has a way, by necessity, of ingress and egress for the general purpose of carrying on plaintiff's business. It is also acknowledged by defendant that perhaps that right-of-way extends from Walnut Street to the loading platform at the south side of the building. Defendant denies, however, that by reason of this way of necessity plaintiff's way extends farther than that and contends that plaintiff has no control over that portion of the way on the south side beyond the loading platform or over any of that portion of the way on the east side of the building or over the entrance on Ninth Street.

If defendant's contention is correct, then he cannot be compelled to remove the fence and gate at the southeast end of the building or the fence closing the entrance entirely on Ninth Street, since they are beyond the loading platform. Defendant would therefore be within its rights in erecting the fences at the southeast corner and at the Ninth Street entrance.

Considered solely as a way by necessity there is

considerable force to the argument of defendant. As a general rule, a way by implication arises only from necessity, not from convenience, 32 *Am.Jur., Sec.* 170, *p.* 166. As a matter of necessity and not of convenience plaintiff could load either by backing into the way from Walnut Street or driving in from Walnut Street and backing out. If the way should be occupied by parked cars and station wagon of the plaintiff and the other lessee, they could of course be moved. In view of the congested parking conditions today, this would undoubtedly entail considerable inconvenience to the management and employees of the plaintiff and affect the orderly course of plaintiff's business.

However, the plaintiff in this case is not limited strictly to a way of necessity. The way was in existence in 1942 at the time of the original lease between plaintiff and defendant. The location of the way around the building was an appurtenance to the building, which was apparent upon a casual examination of the premises. Upon entering the premises as a tenant plaintiff used the way in its entirety, going in and out both entrances and also parking cars thereon. Plaintiff continued such use in this manner from that time until just prior to the institution of this suit. Under these circumstances, the way in effect at that time passed as an incident or appurtenance to the demised premises. Every grant naturally and necessarily imports a grant as it actually exists at the time unless the contrary is asserted and whatever are proper incidents and appurtenances of the grant will pass by operation of law. *U. S. v. Appleton, Fed. Cas.No.* 14, 463, 1 *Sumn.* 492; *McElroy v. McLeay,* 71 *Vt.* 396, 45 *A.* 898; *Toothe v. Bryce,* 50 *N.J.Eq.* 589, 25 *A.* 182. Where an implied easement consists of a formed or enclosed right-of-way, such a right-of-way will pass by implied grant even though it is not a strict way of necessity. See cases cited in 17 *Am.Jur., Sec.* 44, *p.* 955, *note* 10.

Assuming that there was no way in use at the time of the original lease, the use of the way in the manner and to the extent of its use by plaintiff constitutes a selection

of the way by plaintiff. Plaintiff was entitled to a way by necessity. The lease was silent as to such a way. Plaintiff by its use of the way made the selection and defendant, by its silence acquiesced therein. Acquiescence of the owner of the servient estate in the use of a particular location of the way determines the route.

When a right to a way is general as to the extent of the burden to be imposed upon the servient tenement, an exercise of the right with the acquiescence and consent of the other party in a particular course and manner fixes the right and limits it to the particular course and manner in which it has been enjoyed and cannot be changed without the consent of both parties. 2 *Thompson on Real Property, (Perm. Ed.) Sec.* 564, *p.* 164; *Scott v. Black,* 95 *W. Va.,* 48, 120 *S.E.* 167; *Snodgrass v. Crane,* 57 *Cal.App.2d* 565, 134 *P.2d* 862; *Otter Tail Power Co. v. Von Banks,* 72 *N.D.* 497, 8 *N.W.2d* 599, 145 *A.L.R.* 1343; *Douglas v. Jordan,* 232 *Mich.* 283, 205 *N.W.* 52, 41 *A.L.R.* 1437; *Winslow v. Vallejo,* 148 *Cal.* 723, 84 *P.* 191, 5 *L.R.A.,* (*N.S.*) 851; *Hamilton v. Dennison,* 56 *Conn.* 359, 15 *A.* 748, 1 *L.R.A.* 287.

I therefore conclude that plaintiff has the right to the full use of the way in the manner and to the extent of its use since 1942.

2. Were plaintiff's rights violated?

With respect to the testimony concerning the changes in the way made by the defendant there is no real dispute. All the essential facts are admitted, namely: tearing down the wooden fences and garages on the east side, erecting the small fence and gate at the southeast corner, tearing down the gate at the Ninth Street entrance and erecting in place thereof a wire fence without any gates. Since I have concluded that defendant could not legally change the way against the protest of plaintiff, it necessarily follows that plaintiff's rights have been abridged by the defendant.

3. Is plaintiff entitled to an injunction compelling defendant to remove the alleged obstructions?

Defendant contends that a mandatory injunction should not be granted because: (1) there is a dispute as to the right of the plaintiff to the easement and plaintiff must therefore establish that right in a court of law before applying to a court of equity for relief; (2) plaintiff has suffered no irreparable injury.

Relief by mandatory injunction should only be awarded in a clear case, free from doubt, and when necessary to prevent irreparable injury. However, when the right is clear and the damage irreparable, equity will not hesitate to act. It is frequently stated that if the right in an easement in a suit to protect it by injunction is involved in a substantial dispute, equity can give no relief until that right has been determined in a court of law. *Richman v. Schwartz*, 130 *N.J.Eq.* 495, 23 *A.2d* 388; *Smith v. Shiebeck*, 180 *Md.* 412, 24 *A.2d* 795. However, what is a substantial dispute will depend upon proof furnished by the parties. Mere assertions of defendant's right will not be sufficient to prevent a court of equity from proceeding without requiring establishment of that right in a court of law. *Blanchard v. Holland*, 106 *Colo.* 147, 103 *P.2d* 18, 139 *A.L.R.* 159, 163; *Shields v. Arndt*, 4 *N.J.Eq.* 234; *Schuler v. Schuler*, 39 *Pa.Super.* 635.

However, in this case I do not have to determine what proof, if any, is necessary in order to necessitate the refusal of a court of equity to act until the dispute as to the right of plaintiff has been determined. Here it will not be denied that the plaintiff has a way of necessity. It is not disputed that the way was laid out and determined at the time plaintiff first took possession of the building in 1942. Plaintiff has continued for over eight years to use the way in the same manner as then provided. Defendant had knowledge of this use and the manner in which it was exercised. By its silence it has consented to the use of the way in that manner. Since the plaintiff was entitled to a way and since the lease is silent as to the way (other than the reference to the "airway"), all the facts and circumstances surrounding the grant, including the use of the way at that time, the purpose

of the plaintiff in using the premises, the construction placed upon the lease at the time by the parties, and the continuance of the use of that way by the plaintiff up until the time of the institution of this suit must be considered and the way fixed at that time must be adopted. *Metts v. O'Connell,* 13 *Del.Ch.* 420, 126 *A.* 276. See also *Maloney v. Johnson,* 24 *Del.Ch.* 77, 5 *A.2d* 660; *Hackendorn v. Mahan,* 24 *Del.Ch.* 228, 8 *A.2d* 794.

All the testimony in this case has been heard. With the consent of the parties, I have viewed the premises. The obstructions continue to exist. Plaintiff has been injured. It is entitled to and should receive a prompt adjudication of its rights. I am in a position to make such a determination.

Defendant further contends that the plaintiff has not suffered an irreparable injury in that the plaintiff still has a right of ingress and egress from the loading platform into Walnut Street and that, therefore, even though I should determine, as I have, that plaintiff should be entitled to the use of the full driveway as it existed in 1942, I am not warranted, under the facts of this case, in issuing a mandatory injunction.

The term "irreparable injury" has acquired in the law of injunctions a meaning which, perhaps, is not quite in keeping with its derivation or its literal signification. It has been defined by the courts in varying language. 28 *Am.Jur.,* Sec. 48, *p.* 243. In *High on Injunctions,* (4th Ed.), Sec. 22, *p.* 36, irreparable injury is defined as follows:

"But by irreparable injury it is not meant that the injury is beyond the possibility of repair by money compensation but it must be of such a nature that no fair and reasonable redress may be had in the court of law and that to refuse the injury would be a denial of justice."

In *Kerr on Injunctions,* (6th Ed.), *p.* 18, is found the following:

"By the term 'irreparable injury' it is not meant that there must be no way possible of repairing the injury; all that is meant is that

the injury would be a material one and one which could be adequately remedied by damages * * *. A person by committing a wrongful act * * * is not entitled to ask the court to sanction doing so by purchasing his neighbor's right by assessing damages in that behalf."

In the case of *Smith v. Shiebeck, supra* [180 *Md.* 412, 24 *A.2d* 801], which was an action to remove a fence along a right-of-way and in which a demurrer was filed by defendant alleging that the plaintiff had an adequate remedy at law, that court defined "irreparable injury" as follows:

"The term 'irreparable injury' as used in the law of injunction does not necessarily mean that the injury complained of is beyond the possibility of compensation and damages, or that the injury must be very great. But while the complainants would be entitled to recover damages at law, they could not recover for the entire past and prospective injury in one suit but only for the damages prior to the suit. These damages would be difficult to estimate, and in some cases might be comparatively trivial. Therefore, in seeking redress at law, they would be driven to a multiplicity of vexatious and unprofitable suits."

The fact that no actual damage can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in cases where the actions complained of are continuing ones. *Hart v. Wagner*, 184 *Md.* 40, 40 *A.2d* 47.

The injury in this case is substantial and is a continuing one. Plaintiff would not have adequate relief in an action for damages. I must therefore conclude that the injury is irreparable.

In considering an application for a mandatory injunction the court will have regard to the character of the obstructions sought to be removed and whether or not those obstructions can be removed without great hardship being imposed upon the defendant. In this case the obstructions can be removed without a great deal of difficulty. The order which I shall make will not likely impose any great hardship upon the defendant.

I therefore conclude that a mandatory injunction

should issue requiring the defendant to remove the fence and gate at the southeast corner of the building and to remove the fence at the Ninth Street entrance. I do not consider that any further order would be necessary for the protection of the plaintiff, since the driveway (with an entrance on both Walnut and Ninth Streets) is sufficiently wide and adequate for plaintiff's purposes.

An appropriate order will be entered, on notice, in accordance with this opinion.