# CHARLESTON.

MAGGIE L. SCOTT *et al. v.* ANDREW H. BLACK

Submitted November 7, 1923. Decided November 20, 1923.

1. EASEMENTS—*Right of Way Granted in General Terms May be Subsequently Located by Agreement and Use.*

    Where an easement for a right of way is granted in general terms, without giving any more definite location or description than that it is to be 20 feet wide and is to be laid out in the most convenient course, the location may be subsequently fixed by an express agreement of the parties, and the use of the way so fixed with the acquiescence of the owner of the land over which it runs. (p. 52).

2. SAME—*New Agreement and Acts Thereunder Held Extinguishment of Old Way, and to Vest in Parties Same Rights in New Way.*

    Where a right of way over one tract of land is granted for the use of another adjoining tract, and after it is used for 15 or 20 years, the course of a part of the right of way is changed by parol agreement of the then owners of the dominant and servient tenements, and in pursuance of this agreement the new way, which follows a definite course, is used for 15 or 16 years to the exclusion of the former route, the agreement and acts of the parties will, in the absence of proof

of contrary intention, be construed as an abandonment and
extinguishment of the old easement; and the owner of the
dominant estate shall be deemed to have the same rights in
the new right of way as he formerly had in the old.    (p. 54).

Appeal from Circuit Court, Kanawha County.

Suit by Maggie L. Scott and others against Andrew H.
Black.   From a decree refusing to issue an injunction, plain-
tiffs appeal.

*Reversed, and injunction awarded.*

*Elmer L. Stone,* for appellants.
*C. W. Good,* for appellee.

MEREDITH, JUDGE:

Plaintiffs instituted a suit in the circuit court of Kanawha
County seeking to enjoin defendant from interfering with
their enjoyment of a right of way across defendant's land.
The circuit court refused to issue the injunction, and plain-
tiffs appeal.

Plaintiffs and defendant own adjoining farm lands in
Union District, Kanawha County.   Defendant's farm lies be-
tween the lands of the plaintiffs and the main county road.
Prior to September 26, 1887, all the lands, now the property
of plaintiffs and defendant, were owned by A. J. Robinson,
Sr.; on that date, however, he with his wife, Lucretia, con-
veyed two tracts aggregating 150 acres, out of which
plaintiffs' several farms are carved, to his son, A. J. Robin-
son, Jr., and his wife, Mary Ann Robinson.   There was also
granted in the deed a right of way, through the land re-
tained by the grantor, to the county road.   This land, across
which the right of way ran, became by subsequent convey-
ances the property of defendant, Andrew H. Black.   Plain-
tiffs trace their titles to A. J. Robinson, Jr.   That a right of
way for the benefit of the plaintiffs exists by virtue of this
express grant, defendant does not deny.   The controversy
concerns its location, which was not definitely fixed by the
language of the deed.   That language reads:

"And the said parties of the first part also grant

and convey the right of way over this other land be-
tween their two tracts and the nearest county road,
as now located for a road 20 feet wide in the most
convenient place or places, but at the fences there shall
be maintained at all suitable times gates so as not to
damage crops, and not to allow the interference of
stock of the other land of the party of the first part.''

A. J. Robinson, Jr. moved on the premises in the spring
of 1888, and agreed with the grantor, his father, upon a loca-
tion for the right of way to the county road. It was laid
out in a direct course, crossed a small creek on the land of
the servient estate, which creek approximately paralleled the
county road and flowed within a few feet of it, and inter-
sected the county road at a right angle. The road was plowed,
some filling and grading was done, and at some time during
its use a wooden bridge or culvert was constructed across
the creek. A. J. Robinson, Jr. resided on the farm for a
few years only, possibly two or three, during which time he
used the right of way for general hauling purposes. He then
moved away for several years moving back on the farm not
less than fifteen or sixteen years prior to this suit, when he
continued to use the right of way. Apparently, those who
occupied the farm during Robinson's absence also used the
outlet to the county road.

His mother, who appears to have succeeded to the estate
of her husband, A. J. Robinson, Sr., upon the latter's death,
continued to occupy the land abutting the county road, now
the property of the defendant. During A. J. Robinson, Jr.'s
second residence on the 150 acres, the bridge, which, accord-
ing to defendant's witnesses, had become rotten through de-
cay, was completely washed out by high water, and a con-
siderable portion of the road itself, extending back towards
the 150 acre tract was flooded. The creek seems to have
changed its course for several feet so as to flow back on the
road, and seems to have left a bank about four feet high in
the traveled way. Whether this condition was brought about
immediately seems doubtful; it was probably aggravated by
the subsequent abandonment of the right of way at that
point. At any rate, Mrs. Lucretia Robinson, as well as A. J.
Robinson, Jr. and his wife, desired a more convenient outlet,

so, according to Robinson's testimony, at this time, 15 or 16 years prior to this suit, "After the bridge was washed out, me and my mother changed the road so that it run just above where the bridge was that crossed the creek."

The change affected a distance of about 150 feet from the county road back to the point of divergence from the old right of way, and, so far as the proof shows, the 150 feet of the old way so abandoned was never used again by plaintiffs or the Robinsons as an outlet. The new course diverges only slightly from the old way, following the creek bank around the newly created bend in the stream and crossing it further up than before. It is about 17 feet wide at its widest point as it follows the bend in the creek, and about 10 feet wide at the narrowest, and, as we understand the testimony, it is 82 feet from the point of divergence from the old route to the point where the present way crosses the creek. By actual measurement it is 71 feet along the county road from the lower edge of the old right of way to the upper edge of the new. Some proof offered by defendant tends to show that the new road forks in two directions where it intersects the county road, but the evidence is indefinite, and in our view immaterial. It seems to us that the proof shows conclusively that a new road along a definite course back to the point of divergence from the old has been the outlet used by plaintiffs and their predecessors in title for the past 15 or 16 years.

However, the defendant, the successor in title of Lucretia Robinson, built an obstruction across the new road, and now insists that plaintiffs must use the old route across the creek, spending whatever money is required to bridge the stream and fill in the washed out road-bed. Certain defense witnesses say that this improvement can be made at an expense of about $60.00 to $80.00. Plaintiffs here seek to restrain any interference with their use of the new right of way.

Plaintiffs recite in their bill many of the facts which we have outlined, and pray that they may be protected in their enjoyment of the new road for two reasons:

First. Because the road as now located is in the most convenient place, and the improvement of the old route could only be accomplished at great trouble and expense, and,

Second. Because the roadway as now located has been so located and used, uninterruptedly, for more than fifteen years, and was originally so located by the original grantor, Andrew J. Robinson, and the original grantees, Andrew J. Robinson, Jr. and his wife, Mary Ann Robinson.

Paragraph II. of the bill recites the reason for and the fact of the new location by the parties to the Robinson conveyance of 1887.

Defendant's answer denies that the right of way was relocated in pursuance of any agreement of parties in position to make such arrangement, and avers, on the contrary, that the plaintiffs and their predecessors simply allowed the bridge to rot down, and that they then appropriated new ways for their outlet, as it seemed convenient.

We have already narrated what the proof discloses. A. J. Robinson, Jr. and his wife testify that the route was relocated through arrangement with his mother. Defendant admits his ignorance on this point and is in no position to refute plaintiffs proof. We have also stated that in our opinion it is sufficiently proved that the new right of way is a definite and fixed course.

The case as presented by the pleadings and proof amounts to this: A. J. Robinson, Jr. was the owner by deed of a right of way or easement over his father's lands. The deed did not define the boundaries of the right of way, but by subsequent acts the route was fixed by the parties to the grant. The right of way so located was used by the grantee for some 15 or 20 years, when at the joint request of the grantee and the successor in title of the grantor, a portion of the right of way was relocated by parol agreement. The road as relocated was then used for 15 or 16 years by the grantee and his successors, the plaintiffs, until it was obstructed by the then owner of the servient estate, the defendant in this suit.

We will apply the legal principles to the facts as they arose. In the first place, what was the nature of the estate created in A. J. Robinson, Jr. by the deed from his father? We have already quoted the part of that conveyance relative to the right of way granted. It was to be twenty feet wide

and was to be located in the most convenient place. A few months later the parties located the road and marked it by grading and filling it so that it became suitable for travel. It was then used and that use was acquiesced in for at least fifteen years. By these acts the right of way was as positively located, as if it had been defined in the written instrument. 19 C. J., Easements, §213; Jones, Easements, §345; Washburn, Easement & Servitudes (4th. ed.) p. 265. In this way Robinson, Jr., so long as he held the dominant estate was the owner of the easement over a particular route, a property right of which he could not be divested except in certain well established ways. When the creek washed out the bridge and flooded the road, however, the owners of both the dominant and servient estates undertook by parol to effect an exchange of certain rights. It appears that Mrs. Lucretia Robinson, the servient owner, also used the road on occasions, thus her desire to change the road to a more convenient course. So, from that time, 15 or 16 years ago, until this suit, Robinson and the plaintiffs have never used the old way, but have used and now claim the right to use the new. Defendant insists that plaintiffs' interest in the old way is still alive as of old, and that the mere use of the new route under agreement with, and with the acquiescesce of the owner of the land over which it runs, could vest no right or interest in it in the plaintiffs or their predecessor, A. J. Robinson, Jr.

We find that we can not consider the question whether plaintiffs have lost their rights to the old right of way without at the same time discussing their interest in the new. The first principle which applies, however, is that no easement, at least no easement held under a grant, is lost by mere non-user. Washburn, Easements & Servitudes (4th. ed) p. 717; Jones, Easements, §863; 19 C. J., Easements, §151; *Norfolk etc. R. Co. v. Obenchain.* 107 Va. 596; 59 S. E. 604. If lost by non-user it can be lost "only by adverse possession by the owner of the servient land, for such length of time as would bar an action of ejectment." *Bennett v. Booth,* 70 W. Va. 264, 73 S. E. 909. Accord: Minor, Rear Property, §116; 10 A. & E. Ency. Law (2d. ed.) p. 436. There is nothing in this record tending to show that defendant or his prede-

cessors have exercised rights of ownership over the old right
of way hostile to those of plaintiffs, so it can not be said that
plaintiffs are no longer vested with their right to the old
roadway on this theory.

However, plaintiffs, in effect, say that they "abandoned"
the old road and took over the new way in its stead. Now
this position makes out a different case from mere non-user.
It is apparently universally held that "A party entitled to a
right of way or other mere easement in the land of another
may abandon and extinguish such right by acts *in pais* and
without deed or other instrument in writing." 19 C. J. Ease-
ments, §149, citing many cases. And it is further made
clear by the authorities that in proving a case of abondonment
it is not only necessary to prove a physical non-use of the
easement but that nothing short of proof of intention to abon-
don the right will suffice. Minor, Real Property, §113; *Snell*
v.*Levitt*, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; *Vogler*
v. *Geiss*, 51 Md. 407. "Time is not a necessary element; it
is not the duration of the non-user, but the nature of the acts
done by the dominant owner, or of the adverse acts ac-
quiesced in by him, and the intention which the one or the
other indicates, that are important." 9 R. C. L. p. 813. The
introduction of the controlling element of intention brings us
to the facts of this case. Robinson and his wife testify that
they exchanged their right to use the old roadway for the
right to use the new one, in other words, that it was their in-
tention to abandon the one and to accept the other. Mrs.
Lucretia Robinson is dead, and defendant admits his ignor-
ance of the agreement. The fact that the old way was not
used for so many years corroborates Robinson's statements.
We would seem on principle, therefore, to have satisfactory
proof of abandonment both by word and act.

However, authorities which consider facts analogous to
those at hand are not lacking. In *Pope* v. *Devereaux,* 5 Gray
(Mass.) 409, plaintiff sued to recover damages for the ob-
struction of a right of way claimed by prescription. The
defendant offered evidence to show that the grantors of plain-
tiff, and the grantors of defendant had agreed by parol to
substitute a new way for the way in controversy, and that
under that agreement the old way, the one in controversy, was

abandoned. The Supreme Court of Massachusetts held the evidence proper, and in the syllabus said:

> "Evidence of an executed oral agreement between the owners of the dominant and servient tenements to discontinue an old way, and substitute a different one, is competent evidence of a surrender of the old way."

Washburn cites and approves this decision in the following language:

> "But the question seems to be one of the intention of the parties. If it is clear that they intend to substitute one way for another, and abandon the old way, their acts will operate to extinguish the old way; whereas if this intention is not proved, and it is not to be inferred from the acts done, those acts will not extenguish the old way." Washburn, Easement & Servitudes, (4th. ed.) p. 710.

In *Smith* v. *Lee,* 14 Gray (Mass.) 478, plaintiff sued for damages for the obstruction of his right of way over defendant's land. It appeared from the proof that the way in question was a substitute for an older way in which plaintiff had acquired a right, and the substitution had been agreed to by both of the parties. The court held "When a right of way in a certain locality exists, it may be changed by the verbal agreement of the parties; and when the change is actually made, and a new way is thus adopted by them, it fixes and determines their respective rights."

In *Jamaica Pond etc. Co.* v. *Chandler,* 121 Mass. 3, the plaintiff sought damages for the obstruction of a right of way, but the trial court held for defendant on the ground that the plaintiff was using a new way substantially as convenient as the one in controversy. On appeal, however, the Supreme Court held that the fact that the new way was convenient was not controlling, that unless there was an intention to abandon, the old way was not extinguished, and reversed the case.

In *Hammond* v. *Ryman,* 120 Va. 131, 90 S. E. 613, plaintiff Ryman had purchased 67 acres, part of a tract of 107 acres, from Hammond. The residue of the 107 acres re-

tained by Hammond separated Ryman, the plaintiff, from the county road. Plaintiff proved the existence of a right of way through to the county road, although its course had been changed by defendant and the change had been acquiesced in by plaintiff. The court, in decreeing an injunction restraining any obstruction of the right of way as changed, said: ''Changes in the location of a private road made by the owner of the servient estate and acquiesced in by the parties entitled to the use of the road, are equivalent to changes of the route by agreement, and do not in any way prejudice the rights of the latter.''

The case of *Hill* v. *Hagaman*, 84 Ind. 287, is a case much like the present one in that the defendant urged a similar argument to that of defendant here. There as here the plaintiff had held one right of way but by agreement another was substituted. The defendant insisted that the new way was traveled by agreement with and by permission of defendant, and was therefore not held adversely under claim of right. The court said, however, that plaintiff was not holding the new way under a license, but that he had paid for it by giving up the old way.

Several other cases contain facts similar to those which we have referred to. In the syllabus of *Lawton* v. *Tison*, 12 Rich. (S. C.) 88, we find this expression:

> ''Where A has acquired a legal right to the use of a road over B's land, a new road may by parol agreement between them, be substituted for the old—the act of opening the new road by B being a dedication of it to the use of A.''

All of these decisions, many of which are discussed and approved by the text writers, Jones and Washburn, are, we think, conclusive of the present case, and prove not only plaintiffs' abandonment of the old right of way, but their right to the unobstructed enjoyment of the new; not by reason of any prescriptive use of the new road, but by virtue of the agreement of exchange, executed by the subsequent acts of the plaintiffs in using it, and of the defendant in acquiescing in that use.

In holding that there is sufficient proof of plaintiffs' aban-

donment of the old right of way, we have approved the
principle laid down by the many authorities cited that certain
unequivocal acts of abandonment by the owner of the domi-
nant estate are sufficient to extinguish the easement, though
the period of non-user which follows does not equal the pre-
scriptive period of ten years. It might be contended that
in view of the fact that the period of non-user in this case did
exceed that period we have unnecessarily violated the rule
which some seem to think was established by Judge HOFF-
MAN in *Warren* v. *Syme,* 7 W. Va. 474. It might reasonably be
argued that the court in that case did express its opinion that
declarations indicative of abandonment must be coupled with
non-use for a period long enough to bar an action of eject-
ment. However, that expression was not the ground of the
decision. The plaintiffs there sought to protect their enjoy-
ment of the use of a well on defendant's property by seeking
to enjoin the obstruction of such use, but both the trial court
on the hearing and this court on appeal refused the relief
prayed for; the latter court basing its conclusion not on the
issue whether or not the right had been abandoned, but on the
fact that plaintiffs had neither proved their title to the dom-
inant tenement, nor defendant's alleged obstruction of the
easement, which obstruction was denied in the answer of the
defendant. That case, therefore, can not be controlling here.

We therefore reverse the judgment of the circuit court and
award the injunction prayed for.

*Reversed.*