## Lebus v. Kennon.

(Decided March 3, 1925.)

Appeal from Bracken Circuit Court.

Easements—Where Prescriptive Passway was Closed and New One Substituted and Used Without Objection, Dominant Owner Held Entitled to Use of One or the Other.—Where old passway over lands of defendant's predecessor had ripened into an easement by adverse user, and thereafter under contract with life tenant such passway was closed and a new one opened, to the use of which defendant made no objection for several years, held that he could not arbitrarily close new passway without opening old one, as plaintiff is entitled to use of one or the other.

M. HARGETT and T. W. CUMMINS for appellant.

JOHN P. McCARTNEY and ROBERT BUCKLER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Clarence Lebus brought suit in equity to enjoin Robert Kennon from closing a passway running over the latter's land. On final trial the court refused the relief sought and dismissed the petition. Lebus appeals.

As is usual in such cases there is some conflict in the testimony, but we think the evidence as a whole establishes the following facts:

The passway in controversy leaves the Falmouth and Brooksville turnpike at the North Fork creek a short distance from Milford and runs in a southerly direction over the lands of John Brough, a distance of about eighty feet to the line of appellee; thence over his lands along the creek bluff a distance of 965 feet to appellant's line; thence on his land. The land between the road and the creek on appellee's farm embraces two or three acres and is of no particular value except a little bottom of one-quarter to one-half acre. Brough is making no contest.

Appellant's boundary embraces about six hundred acres, much of it being hilly and broken. It formerly be-

longed to Dan Haley, who died in the year 1890. It was divided and devised by him to his two sons, John and Marshall, each of whom had a residence upon it.

Appellee's land was formerly owned by Robert Kennon, who died in the year 1871. In the division of his estate there was allotted to his widow as dower the tract over which the passways mentioned herein ran. For many years there have been to the west and south of the Haley lands dirt public roads which in the course of time were metaled. Also as far back as 1850 there was an old road leaving the Falmouth and Brooksville pike near the town of Milford and running through the enclosed field of Robert Kennon, passing a graveyard, on to the Haley land, and thence by the Haley residence to the dirt road at the south end of his farm which connected with the other roads mentioned, and this seems to have been used as a matter of right by the Haleys and the public generally, there being gates at the Kennon lines to enter his fields.

After the death of Dan Haley, John Haley lived on the southern end of the Haley farm and Marshall Haley on the northern, and about 1893 an arrangement was made between John Haley and the widow of Robert Kennon by which the old roadway running through her field was closed and another opened outside of her fields, and also outside the fields of Marshall Haley. It appears that John and Marshall Haley built these fences, both for John Haley and for Mrs. Kennon. They also did some grading on the road and put in some culverts for drainage, and this continued to be used by them and the public generally without any objection on the part of the Kennons. Their post office, school and church were all located at Milford, which cannot be reached by any other route without increasing the distances from their residences by from two to two and one-half miles.

Mrs. Kennon died in the year 19—, and in the sale of the dower interest in 1917 appellee became the purchaser and has since owned that tract. He also had been tenant of his mother for many years prior to that time. Marshall Haley sold his tract in separate parcels to Grover and Herman French.

In the year 1916 appellant purchased John Haley's tract of land, and later in 1919 and 1920 purchased the French places, so that he is now the owner of it all.

In 1921 appellee closed the passway by constructing a fence across it at each end. He admits that his mother

permitted the Haleys to construct the first fences mentioned and to use the present road as indicated, but claims that the old road had been closed prior thereto by the order of Dan Haley, and that it remained closed for three or four years prior to opening the new one, except when permission was obtained to let down the fences on particular occasions; and that as a matter of accommodation his mother agreed with the Haleys that if they would run the fence on the side of her field they might use the present passway during her lifetime.

He also argues that as the deeds to Lebus made no reference to these roads that no claim was being made to them; that the Haleys had failed to maintain the fences and he had a right to close this one at his pleasure.

However, the weight of the evidence is to the effect that the new road was opened and the old one closed simultaneously and each formed the consideration for the other. A decision of the case does not turn upon the character of contract the Haleys had with Mrs. Kennon, nor is it necessary to determine whether the life tenant may encumber real estate with such an easement or as to whether any persumption of a grant will arise in favor of those who commence the use of such passway during a life tenancy and continue it under a claim of right for 15 years.

We have seen that the old passway was opened prior to 1850 and was used as a matter of right by the public generally. It passed through the enclosed field of Robert Kennon. Its termini and course seem to have been well established and by adverse user it had ripened into an easement long before the change to the present passway, and we must so hold in the absence of any proof to show that such use was permissive. Lyles v. Graves, &c., 147 Ky. 807; Smith v. Pennington, 122 Ky. 355; Bordes v. Leece, 179 Ky. 655; Hampton v. Fuson, 165 Ky. 182; Wilkins v. Barnes, 79 Ky. 323; O'Daniel v. O'Daniel, 88 Ky. 185; Daniel v. Shaver, 184 Ky. 674.

Whatever may be the lack of authority in a life tenant to create such an easement it cannot be said that an existing easement is extinguished by a contract of this character. Certainly appellant is entitled to one of the roads.

Appellee cultivated the land during his mother's life and purchased it after her death. During these years and for four years after his purchase he made no objection

to the use of the new passway. At the date stated above he arbitrarily closed it without offering to open the old one. Neither in pleading, proof nor brief does he indicate a willingness to do so. Under such circumstances his action ought not to be maintained in a court of equity. If upon a return of the case he expresses a willingness for the old passway to be opened the court might grant him relief in the closing of this one, judgment to be drawn on equitable terms, otherwise not.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.