## Gardner et al. v. Hope.

(Decided Jan. 27, 1933.)

M. M. LOGAN and LOGAN & LOGAN, W. R. GARDNER and WILLIS & HINES for appellants.

BRATCHER & MOORE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, J. F. Hope, who was the plaintiff below, brought this action against the appellant J. B. Gardner to enjoin the latter from obstructing what was alleged to be a public road over Gardner's land.

It is alleged in the petition that there is a public road leading from the Morgantown-Rochester road across the lands of Alfred Moore and the defendant J. B. Gardner to the Bowling Green-Morgantown road near the farm of Herman Hammers, and that such public road has been continuously used by the public as a matter of right, openly, notoriously, and adversely to the defendant and his predecessors in title for more than thirty years next before the commencement of the action.

The defendant answered traversing the allegations of the petition. The answer contained the following affirmative allegations:

"Comes the defendant and further alleges affirmatively that there is no public passway where plaintiff is claiming there is; he says that there was an old haul road across part of defendants' land several years ago but says that the old haul road was abandoned several years ago and never was used by the traveling public for such a length of time to obtain title to same. Defendant further says that this old passway has not been traveled for years and is impassable and has been so for many years and will require many days' work before it could be traveled over and same was obstructed from travel years before the defendant built his private road into his mine."

The appellant Ruby B. Gardner, wife of J. B.

Gardner, filed an intervening petition claiming owner-ship of the land over which the alleged road passed and asking to be made a party defendant, which was done. The court granted a temporary injunction re-straining the defendants from obstructing the road in question, and on the hearing on the merits a perman-ent injunction was granted, and the defendants have appealed.

The road, which is the subject-matter of this liti-gation, begins at a point on the Morgantown-Rochester road near the Pleasant Rock Church, and passes through the lands of Alfred Moore, J. B. Gardner, Pete Smith, and L. O. Hocker, and intersects an old county road known as the Limestone Schoolhouse road, about 500 yards from highway No. 71, which is the road from Morgantown to Bowling Green. The Morgantown-Rochester road and highway No. 71 converge at a point about 2½ miles from the point where the road here in question leaves the former road and about the same distance from the point where it intersects highway No. 71. The alleged passway is 1¼ miles in length and shortens the distance for persons traveling from the neighborhood of the Pleasant Rock Church to Bowling Green about 4 miles.

Appellee owns the mineral rights in a tract of land in which appellant Gardner owns the fee which is situ-ated a few hundred yards from the Morgantown-Rochester road near the Pleasant Rock Church. He is operating a coal mine and delivers the coal by trucks to customers in Bowling Green and neighboring towns. Gardner also operates a coal mine on his land and de-livers the coal in trucks in Bowling Green and vicinity. Shortly before this litigation arose he constructed a road from his mine to the old road here in controversy and thence to the Limestone Schoolhouse road. He improved the road by grading it and surfacing it with slag taken from his mine. Appellee claims that the road as improved by Gardner is on the old roadbed of the road in controversy from the point where Gard-ner's private road intersects the latter to the point where the latter intersects the Limestone Schoolhouse road.

Gardner, on the other hand, claims that the road constructed by him follows the old road about 100 yards after intersecting it and then leaves it and intersects

the Limestone Schoolhouse road at a point 200 yards distant from the point where the old road intersected the old county road. The length of the road constructed by Gardner from the point where he claims it leaves the old road and intersects the Limestone Schoolhouse road is about 400 yards. He constructed this part of the road at a cost of approximately $1,000, and he strenuously insists that the public has no right to use it.

The chief question for determination is one of fact. Had the old road, extending from the Morgantown-Rochester road through the lands of appellee and others to the Limestone Schoolhouse road, been used by the public to such an extent and in such a manner as to constitute it a public road, and did the road constructed by Gardner follow substantially the route of this old road?

It is settled in this state that a general and long-continued use of a passway by the public as a right will create the right to continue the use and the owner of the land traversed by the passway who allows the public to use it as a highway for a long period of years under a claim of right will be estopped from denying a dedication to the public. Long-continued user by the public will constitute an implied acceptance of the dedication. Tolliver v. Louisville & Nashville Railroad Company, 226 Ky. 132, 10 S. W. (2d) 623; Wilson v. Pioneer Coal Company, 191 Ky. 408, 231 S. W. 37; Carter v. Shrout, 185 Ky. 729, 215 S. W. 808; Riley v. Buchanan, 116 Ky. 625, 76 S. W. 527, 528, 25 Ky. Law Rep. 863, 63 L. R. A. 642, 3 Ann. Cas. 788. In the last-cited case earlier Kentucky cases were distinguished, explained, and limited in an exhaustive opinion in the course of which the court said:

"If, however, there is not an express dedication, but the owner suffers the public to use the passway, knowing it is claiming it as a matter of right, the law presumes a dedication to the public, and presumes the dedicator's intention to be in accord with the public's use. This does not depend upon whether there has in fact been an actual dedication to the public, but it is founded upon the principles of estoppel in pais. If the real owner suffer the public generally to so use his land as a passway, under a notorious claim of right, for a great length

of time, whereby others may have been induced to buy property in that vicinity relying upon the apparent right of the public to use this passway, and by which the purchase price of their lands may have been affected, it is unfair that the owner should be permitted to gainsay the truth of it. The law operates upon his conscience, and makes effectual that which he has suffered for so long to appear to be so, by raising the conclusive presumption that he has actually done what he allowed the public to believe he had done—dedicated the passway to the use of the public.''

In summarizing what is necessary to constitute acceptance, it was said:

''We feel constrained by reason and authority to hold that, while an acceptance by the public is essential to a complete dedication of a public highway or passway, the acceptance may be either by formal ratification by the proper official board of the municipality; or by implication by it, where it takes charge of the road by directing improvements on behalf of the public, or otherwise by overt act recognizes it as a public road; or it may be by the public by such protracted and continued use as to clearly indicate its acceptance, when the road dedicated is a benefit to the public and not a burden.''

This case has been cited with approval in numerous decisions of this court and the courts of other jurisdictions, which may be found by a reference to Shepard's Southwestern Reporter Citations.

The appellants contend that the evidence introduced by the appellee in this case fails to bring it within the rule announced in the Riley and similar cases. A number of witnesses testified that the road as constructed by Gardner is on the roadbed of the old passway which had been in existence for 40 or 50 years. As to the nature and extent of the use of the old road, several witnesses testified that they had known the road for more than 40 years, and that during all that time it was traveled continuously by the public generally without let or hindrance. There was evidence that members of the public used the road in traveling to and from the Pleasant Rock Church and a cemetery in the neighborhood and other points on the Morgan-

town-Rochester road and the Morgantown-Bowling Green road now known as highway No. 71. Wils. Haynes, who had known the road for 25 years, testified that the public had used the road during that time without objection from the owners of the land and without asking their permission. At one time when he was employed by the county he used the road daily and hauled road material over it. Thaxton Belcher testified that he had used the road for about 24 years, had hauled hay over it, and at times had traveled it as frequently as two or three times a week. James N. Hilton had known the road for 50 years, and, while he had no occasion to use it during the last 25 years, he had used it frequently during the first 20 or 25 years that he had known it without obtaining permission of the landowners, and the public generally used it during that time in the same manner. Jake Embry testified that the road had been a public passway during the time he had known it, a period of more than 20 years, and that he and the public generally used it as such. Pete Smith owns a tract of land adjoining the Gardner land, and a short section of the road is on the Smith land. During the 20 years he had known the road, it had been used by him and the public generally as a public road. C. J. Drake, who was 79 years of age when he testified, had known the road for 40 years, and during all that time it had been used by the public. Rollin Baxter testified that the public generally had used the road as a matter of right during the 15 or 16 years he had known it. The testimony of a number of other witnesses who had known the road for periods of time ranging from 3 to 50 years was of the same general tenor. All of them stated that the road constructed by Gardner was on the site of the old road or deviated from it only a few feet.

Appellants introduced several witnesses whose testimony tended to indicate that the use of the road was permissive, but several of them testified that they and others had used the road without obtaining permission from the owners of the land. A large part of the evidence introduced by the appellants was in support of their contention that the road constructed by J. B. Gardner was on virgin soil and left the old road at a point 400 yards from the Limestone Schoolhouse road and that its terminus was 200 yards from the terminus of the old road. The evidence on this point was

conflicting, but, as stated by the chancellor in his opinion, the evidence that the road constructed by Gardner was on, or very near, to the site of the old road, preponderated. But, if the facts were as claimed by appellants, it is not denied that they have constructed the new road so as to render the Limestone Schoolhouse road impassable beyond the point where it is intersected by the new road.

Where a passway is closed and a new road is opened by the owners of the servient estate, the persons who had the right to use the old passway will be granted the right to use the new road. Lebus v. Kennon, 207 Ky. 633, 269 S. W. 741. However, the appellants contend that the evidence fails to show the existence of a public passway through any portion of their land, and further that, if such a passway once existed, the evidence established the abandonment of its use by the public. There is considerable conflict in the evidence on these points, but it is satisfactorily established that a road through the land now owned by the Gardners has been used to some extent by the public generally as a matter of right for a period of 40 or 50 years. During the last few years the road on account of its condition was not used to a great extent, but there is evidence that it was used within the last two or three years by persons in vehicles of various kinds.

It is claimed that an inclosed field through which the road passes has been cultivated from time to time, and that this shows both abandonment and that the use of it by the public was without claim of right. The persons who cultivated the field, however, testified that they plowed the land only to the road. The appellee, in improving that portion of the road between the Morgantown-Rochester road and the road constructed by Gardner, removed a tree of 25 years' growth, and it is argued from this that the road had not been used for at least 25 years, but the great weight of the evidence is to the contrary. It is shown that the traveling public made slight deviations from the old roadbed at various times, but this did not amount to abandonment. Bordes v. Leece, 179 Ky. 655, 201 S. W. 4.

At last the only issues to be determined are issues of fact. The chancellor went upon the ground and viewed the territory referred to in the evidence. In his opinion he said:

"Considerable proof was taken on each side and as is usual in such cases a great deal of that proof is quite conflicting. I will not take the time to discuss the proof but it will suffice to say the proof shows beyond any doubt that there has been a public pass-way over the lands in question for more than thirty years, and that the same was never abandoned. The plaintiff had the burden of establishing this public pass-way, which burden the plaintiff met, and then the burden shifted to the defendants to prove the abandonment of same. But the defendants were unable to show by clear and convincing proof the public had abandoned the pass-way, though they did show it was not greatly used by the public on account of its rough condition which made travel quite difficult and inconvenient over it."

The chancellor's findings of fact are entitled to some weight, and, in view of the conflicting nature of the evidence, this is a proper case for the application of the well-known rule that, where the mind is left in doubt, his judgment will not be disturbed on appeal.

The judgment is affirmed.