**Sheridan RIFE et al., Appellants,**

v.

**John H. FLEMING et al., Trustees for the Church of Christ, etc., Appellees.**

Court of Appeals of Kentucky.

Oct. 28, 1960.

Charles E. Lowe, Pikeville, for appellant.

Francis M. Burke, Pikeville, for appellee.

STANLEY, Commissioner.

This action arises from a schism in "The Church of Christ at Virgie, Pike County, Kentucky," an independent and self-governing religious body. The controversy is over the orthodoxy of using instrumental music in church services and instructional and interpretative literature in the Sunday school, affiliating with missionary agencies, and the participation of women in church activities. The controlling question is whether the organizers of the congregation and the members at the time of the purchase of the property involved believed in such religious observances or opposed them.

The circuit court first rendered judgment that both factions were entitled to use the property and could do so alternatively, as prescribed. On an appeal we held the judgment to be erroneous since the trial court should have found and adjudged which faction represented the membership adhering to the fundamental doctrines of the church as advocated and practiced at the time of its organization. In the absence of a finding of fact (CR 52.01) we could not properly determine which group was entitled to the exclusive use of the property. Fleming v. Rife, Ky., 328 S.W.2d 151.

The same or a similar subject of controversy has given rise to other litigation reaching this court. See Martin v. Kentucky Christian Conference, 255 Ky. 322, 73 S.W.2d 849; Parker v. Harper, 295 Ky. 686, 175 S.W.2d 361; Hall v. Deskins, Ky., 252 S.W.2d 417; Franklin v. Hahn, Ky., 275 S.W.2d 776; F Street Church of Christ v. Beasley, Ky., 288 S.W.2d 657. The applicable law declared in those cases, particularly Parker v. Harper, supra, (in which the facts are strikingly like the present) need not be restated.

Upon the return of the case, the court adopted a report of a special commissioner, Fred B. Redwine, as properly stating the facts and the law. It was adjudged that the group favoring the use of instrumental music and the observance of other practices was entitled to the property. These were held to be "the beliefs and doctrines to which the church was originally dedicated by the original founders of the church." The opponents were required to surrender complete possession of the church property, and they and their successors were permanently enjoined from interfering with the other group in their exclusive possession and use of the property as a place of meeting and worship. The appeal follows.

The appellants insist that, notwithstanding one of the grounds of reversal of the former judgment was the absence of a finding of fact, the court still has not complied with CR 52.01; for the judge merely entered an order sustaining the commissioner's report. The order of the court, however, reads, "The Court adopts the findings of fact of the special commissioner as the Court's finding of fact." The court also adopted the recommendation of the

commissioner that judgment be awarded the plaintiffs. Our Rule 52.01, which relates to the finding of facts by a trial court, expressly provides, "The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." Where the commissioner was by training and experience competent to sift and evaluate the evidence and his report is specific and complete, as in this case, and the judge adopts the report as being his own finding and rests the judgment on the report, the provision of the Rule that the findings will not be set aside unless they are clearly erroneous applies. Clay, CR 52.01, Comment 4.

The record does not disclose the number of members of this congregation at the time of the schism. A witness testified that there were twenty-five or thirty members when he had belonged to the church, and there is no evidence as to which faction constituted the majority. The only question in the case is which group adhered to the fundamental doctrines of the organizers of the church and represented the faith of the membership when the property was acquired.

For several years the congregation met in the schoolhouse or the homes of its members until the erection of the building in 1940. It appears there had never been a regular pastor. Different men, who had secular occupations or jobs, preached in the church quite regularly. As later developed, some of them had believed it to be right to use instrumental music in the services and some had believed it to be sinful. The church has never had a musical instrument—some say because they could not afford it—and the subject was not spoken of. All along, the church has had a Sunday school in which instructional literature was used; and women had taught the lessons. It had also joined other like congregations in missionary efforts. The diversity of views developed, and the disputation was precipitated and agitated after the appearance in the community of one A.

E. Harper (see Parker v. Harper, supra) and one Roy Hall (see Hall v. Deskins, supra). Eventually, a definite division developed; and each group forcibly excluded the other from using the building. One group has been led by the appellee, John H. Fleming, who was one of the organizers and who has from the beginning continued to be the most active member of the church. The other group is led by the appellant, Sheridan Rife, who no longer lives in the community and whose present membership in this congregation is disputed. Brother Fleming and Brother Rife have each contended the other shifted his position and abandoned or repudiated his faith with respect to the vital tenets. The commissioner agreed with Brother Fleming.

█ Most of the testimony is by outsiders, who are roving preachers and other zealots who are not members of the Virgie church. The defendants Parsons and Blankenship have their membership elsewhere, as perhaps has Rife, the other defendant. We agree with the observation of the commissioner that "were they [the outsiders] not expounding the word of God, which gives pause to criticism of them," they should be called "officious, intermeddlers and troublemakers." A party who has never been a member or has ceased to be a member of a religious society has no longer standing to sue in relation thereof. Hall v. Hall, 177 Ky. 430, 197 S.W. 799; 76 C.J.S. Religious Societies §§ 15, 75.

█ The conveyance of the property involved to trustees of the "Church of Christ" gives rise to confusion in denominations. Alvis Ford, who had been a preacher for forty-eight years, testified that he organized this congregation and had always believed "it was all right to play music and sing hymns." He belonged, he said, to the "Church of Christ, commonly known as the Christian Church." He and others testified that the terms have been used interchangeably or "synonymously" throughout that part of the country. See Kentucky

Christian Missionary Society v. Moren, 267 Ky. 358, 102 S.W.2d 335. However, as revealed in several cases reaching this court, they are ordinarily distinct and somewhat conflicting bodies; and those who advocate the use of instrumental music in the services and the other practices mentioned are generally known as "The Christian Church" or "The Disciples of Christ," and those opposed are known as "The Church of Christ." Under the evidence in this case we cannot regard the conveyance of the property to the "trustees of the Church of Christ" to be of controlling significance.

The undenied proof that this little congregation has from the beginning observed the stated practices fortifies the persuasive testimony that it has been within the denomination which recognizes the propriety of instrumental music in the worship services.

The findings and judgment of the circuit court are sustained by the evidence rather than "clearly erroneous."

The judgment is affirmed.