**Nevard WELLS, Appellant,**

v.

**Dennis SANOR and Susan Sanor, Appellees.**

No. 2002–CA–002456–MR.

Court of Appeals of Kentucky.

Jan. 23, 2004.

Discretionary Review Denied by Supreme Court Jan. 12, 2005.

J. Scott Preston, Paintsville, KY, for appellant.

Don A. Bailey, Wilson & Bailey, Louisa, KY, for appellee.

Before KNOPF, TACKETT, and TAYLOR, Judges.

## OPINION

TACKETT, Judge.

Nevard Wells appeals from an order of the Johnson Circuit Court that adopted the recommended findings of fact, conclusions of law and judgment rendered by the master commissioner, which affirmed the existence of a sixteen-foot right-of-way easement in favor of the appellees, Dennis and Susan Sanor, over property owned by Wells, and also awarded the Sanors $3,000 for loss of use and enjoyment of their property because of Wells preventing access to their property by way of the easement. We affirm.

The parties own property in a hollow near Daniels Creek in Johnson County that was previously part of a single parcel of land owned by Sam Clark. In 1936, the Clark parcel was divided by a court-ap-

pointed commissioner into several lots and has been subdivided several times over the years. Nevard Wells owns the major portion of Lot 4 and a small portion of Lot 5. The Sanors own the major portion of Lot 5 and a small portion of Lot 4. Wells purchased his property, consisting of approximately 51 acres, in July 1952. The Sanors purchased their property, consisting of approximately 71 acres, in August 1998 from the heirs of George Delong, Sr. The Sanors' property is behind or south of Wells's property, which abuts a county road.

The right-of-way easement at issue first appeared in 1936 in the chains of title of both parties and was duly recorded and placed on government topographical maps of the area. The deed provision reserved a "16 foot road" from the tract now owned by the Sanors (the dominant estate) to the county road through Lot 4, which is the portion now owned by Wells (the servient estate). The Sanors' only access to their property from the county road is through Wells's property. The easement initially ran entirely on Lot 4 on the right side of the creek branch, but in the 1940's before Wells purchased his property, the route was altered at the request of Wells's predecessor in title to run through Lot 5 on the left side of the creek branch on Wells's tract, and then cross over the creek branch at a culvert onto Lot 4 to a gated area near the Delong's house. In effect, the beginning and ending points were the same but a major portion of the roadway was shifted from one side of the creek branch to the other side.

George Delong first purchased a one-acre parcel of Lot 4 in 1937, where he built the family residence. He later purchased a 70–acre parcel of Lot 5 in 1943 and a one-quarter acre parcel of Lot 4 in 1944. The Delong family lived on their property from 1937 to the mid 1950's, when they moved to West Virginia. They continued to rent out a portion of the property to other persons until the 1970's. George Delong and a few other family members moved back to the homestead for a few months in the late 1950's. George Delong also returned 10–12 times a year and would stay for a few days or more in a converted bread truck or small building. Other Delong family members also hunted on the property until shortly before it was sold to the Sanors in 1998. Between approximately 1937 and 1943, timber was cut from the 70–acre parcel. A "tramway" with wooden tracks similar to a miniature railway was built alongside the creek branch to accommodate the transport of logs to a sawmill built near the culvert and the Delong homestead.

When George Delong acquired his first tract in 1937, a wooden bridge crossing Daniels Creek existed that connected with the right-of-way roadway. Due to the deterioration of the first bridge, Delong reconstructed the bridge in the 1940's. In 1964, a third, new bridge was constructed crossing Daniels Creek that was approximately 20–25 feet upstream from the prior bridge and was used by the Delong family and the Wells family to access the roadway. In December 1998, shortly after the Sanors purchased their property, Wells placed a locked gate near the new bridge preventing their use of the right-of-way. Since 1998, the right-of-way roadway easement has been largely unused and has become somewhat overgrown with vegetation due to lack of maintenance.

On June 8, 1999, the Sanors filed a civil action seeking to quiet title in their favor to the roadway easement, to enjoin Wells from interfering with their use of the roadway, and requesting monetary damages for their loss of use of their property. Wells filed an answer generally denying the complaint and a counterclaim alleging that he had constructed the third bridge

over Daniels Creek. Wells asked for judgment enjoining the Sanors from using the bridge or entering his property.

The trial court referred the case to a master commissioner, who conducted an evidentiary hearing on June 28, 2001. Several witnesses testified at the hearing including Dennis Sanor, Nevard Wells, two of George Delong's children and his grandson, a land surveyor, and a state highway official. Deposition testimony of several other witnesses, including Alex Wells, Nevard Wells's brother, was admitted as evidence as well. Both parties submitted legal memoranda on the issues following the hearing.

On November 14, 2001, the master commissioner issued a recommended judgment that included findings of fact and conclusions of law. He recommended quieting title in the Sanors to a sixteen-foot right-of-way easement through Wells's property over a route that traverses portions of both Lot 4 and Lot 5 and the "third" or current bridge over Daniels Creek. The judgment required Wells to remove all fences, obstructions, or gates preventing use of the entire sixteen-foot-width of the easement, and awarded the Sanors $3,000 for the loss of use of their property since December 1998, when Wells blocked their use of the roadway with the locked gate. On November 20, 2001, Wells filed exceptions to the recommended judgment challenging several factual findings and conclusions of law. The Sanors filed a response to the exceptions. On November 12, 2002, the trial court entered an order adopting the recommended judgment of the master commissioner in its entirety. This appeal followed.

Wells raises several issues involving the present existence of a right-of-way easement, the scope of the easement, the award of damages, and the admission of hearsay testimony during the hearing.

We begin with a statement of the standard of review. Under Kentucky Rules of Civil Procedure (CR) 52.01, in an action tried without a jury, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." *See also Greater Cincinnati Marine Service, Inc. v. City of Ludlow*, Ky., 602 S.W.2d 427, 429 (1980); *Rife v. Fleming*, 339 S.W.2d 650, 652 (1960). A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998). Substantial evidence is evidence that, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Golightly*, 976 S.W.2d at 414; *Sherfey v. Sherfey*, Ky.App., 74 S.W.3d 777, 782 (2002). With respect to property title issues, the appropriate standard of review is whether the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error. *See Cole v. Gilvin*, Ky.App., 59 S.W.3d 468, 473 (2001).

A major issue in this case involves the route of the right-of-way easement. The deed provisions created an easement through Lot 4. At some point in the early 1940's, prior to Wells acquiring the property, the route was altered either at the request or acquiescence of the owner of the northern portions of Lot 4 and Lot 5. Wells contended that the new route existed entirely on Lot 5 along the tramway until it reached the Delong property then turned due south. The Sanors maintained, and the master commissioner found, that the final third of the route at the southern

end turned southwesterly crossing the creek onto Lot 4 for approximately 100 feet, and ending at a gate on the quarter-acre tract of the Delong property. This finding was supported by testimony of several witnesses and a geological topographical map dated 1954 showing the route partially traversing Lot 4. Thus this finding was not clearly erroneous.

■ Wells does not appear to contest the existence of a right-of-way easement through Lot 5, but he challenges a 25–35 foot portion of the roadway claimed by the Sanors near the northern or beginning section of the roadway from the old bridge to the new bridge, and a 100 foot section at the southern or rear portion from the culvert to the gate on the Delong property. Wells argues that he adversely possessed that portion of Lot 4 adjacent to the roadway easement claimed on Lot 5, so the deed provisions in the parties' chains of title describing a right-of-way easement on Lot 4 are rendered irrelevant, and any claim to an easement must be by prescription or implication.[1] He further postulates that because the Sanors' right to an easement derives from prescription or implication, the scope of the roadway easement is based on the nature of its use, rather than the deed language, which he claims is eight feet in width.

■ The traditional rule at common law is that an easement with a fixed location cannot be relocated without the express or implied consent of the owners of both the servient estate and dominant estate, except in cases of an estate by grant where the creating instrument provides otherwise. *See generally,* 28A C.J.S. *Easements* § 157 (1996); 25 Am.Jur.2d *Easements and Licenses in Real Property*

§ 79 (1996); F.M. English, *Relocation of Easements,* 80 A.L.R.2d 743, 1961 WL 13063 (1961); *Sloan v. Rhodes,* 274 Ga. 879, 560 S.E.2d 653 (2002); *MacMeekin v. Low Income Housing Institute, Inc.,* 111 Wash.App. 188, 199 45 P.3d 570, 575 (2002). " '[A]n agreement to relocate may be implied from the parties' actions, such as when an easement holder uses a new location established by the owner of the servient estate or when a landowner stands by while the easement holder utilizes a different route.' " *Ericsson v. Braukman,* 111 Or.App. 57, 61, 824 P.2d 1174, 1177 (1992)(quoting Jon W. Bruce, *Law of Easements and Licenses in Land* ¶ 7.03[1][c](1988)); *Henning v. Neisz,* 148 Ind.App. 576, 268 N.E.2d 310 (1971). If an easement is relocated by consent of the servient estate owner, "all the rights of the original easement attach to the relocated easement." *McCarty v. Walton,* 212 Cal. App.2d 39, 46, 27 Cal.Rptr. 792, 796 (1963). *See also* 28A C.J.S. *Easements* § 157; *Johnson v. Allen,* 33 Ky. L. Rptr. 621, 110 S.W. 851 (1908). A dominant estate owner retains the right to unobstructed use of the relocated route of a roadway easement substituted for the original route by consent even after abandonment of the original route, not by reason of any prescriptive use but by virtue of agreement of the exchange by acquiescing in the use. *Scott v. Black,* 95 W.Va. 48, 120 S.E. 167 (1923). Kentucky, however, follows a minority position that in addition to mutual consent also allows the owner of a servient estate to unilaterally modify or alter the location of a roadway easement so long as it does not change the beginning and ending points and does not result in a material inconvenience to the rights of the dominant estate. *See Stewart v. Compton,* Ky. App., 549 S.W.2d 832, 833 (1977)(citing

1. See generally *Cole v. Gilvin,* Ky.App., 59 S.W.3d 468 (2001)(describing easements by

prescription and implication).

*Terry v. Boston,* 246 Ky. 222, 54 S.W.2d 909 (1932)).[2] See also Restatement (Third) of Property (Servitudes) § 4.8(3) and cmt. f. (2000).

In the current case, a right-of-way easement from the county road to the property now owned by the Sanors across property now owned by Wells was expressly created by grant with a reservation in the parties' chains of title. Although the deed provisions stated the easement would exist on Lot 4, there was evidence that at some time in the late 1930's or 1940's, the northern or front end of the route was relocated from Lot 4 to its current location partially on Lot 4 and partially on Lot 5. The evidence suggests that the modification was at the request of Wells's predecessor in title or at least by mutual consent. Additionally, a new bridge across Daniels Creek was built in 1964, after which the parties used a slightly different route over the new bridge. Wells acquiesced in the use of the new bridge route until 1998, when he attempted to prevent access by the Sanors.

■ Wells's contention that his exclusive use of a portion of the original roadway easement on Lot 4 divested the Sanors, the dominant estate owners, of their rights under the deed provisions is without merit. Both modifications or relocations of the roadway's route occurred by consent, either express or implied. The relocation of the roadway did not change the nature of the easement from an express grant to one by prescription or implication. The Sanors are therefore entitled to all the rights granted to them under the deed provisions, including the use of an easement sixteen feet in width and use of the new bridge [3] along the relocated route. *See, e.g., Johnson v. Allen,* 33 Ky. L. Rptr. 621, 110 S.W. 851 (1908)(affirming rights of dominant estate owner to altered passway easement under express grant); *Lebus v. Kennon,* 207 Ky. 633, 269 S.W. 741 (1925)(recognizing right of dominant estate owner to either relocated passway easement or to original passway). Because the Sanors' right to the easement is derived from an express grant, they are entitled to enjoyment of the full 16-foot width delineated in the deeds even if the actual use of the right-of-way did not extend to the full dimensions of the right-of-way. *See Hester v. Johnson,* Ky., 335 S.W.2d 574 (1960).

■ Wells also contests an award of monetary damages to the Sanors. In addition to injunctive relief, the trial court awarded the Sanors $3,000 in monetary damages based on the rental value of the property. Wells asserts that he would have allowed the Sanors access to the roadway if they would have merely asked him to open the gate and sought permission to use the roadway. He states that "any damages have been created by Mr. Sanor. His problem was he didn't want the inconvenience of having to ask." Den-

---

2. Although *Stewart* involved an easement with an express reservation in the servient estate owner's chain of title, the case of *Gabbard v. Campbell,* 296 Ky. 216, 176 S.W.2d 411 (1943), suggests that the rule allowing unilateral relocation may apply only to easements created by prescription.

3. In addition, the master commissioner's alternative finding that the Delong family had a concurrent ownership interest along with Wells in the new bridge was supported by sufficient evidence and is not clearly errone- ous. Wells's complaint that the finding was based on inadmissible hearsay testimony from George Delong's sons about his statements concerning creation of the new bridge is without merit. This testimony was admissible as an exception to the hearsay rule under KRE 803(20) for reputation concerning boundaries or general history. *See, e.g., Broyhill v. Coppage,* 79 N.C.App. 221, 339 S.E.2d 32 (1986)(applying Evidence Rule 803(20) to testimony regarding use of roadway easement).

nis Sanor testified that Wells installed a gate with a chain and lock shortly after the Sanors purchased their property. Sanor stated that Wells told him that he (Sanor) did not have a right-of-way over his (Wells) property and he would have Sanor arrested for trespassing if he attempted to use the roadway.

The evidence clearly shows that Wells obstructed the use of the roadway easement by the Sanors. Wells's argument indicates that he required the Sanors to request his permission before he would allow them to use the roadway. Wells was subject to damages for interfering with the Sanors' enjoyment of their right to use the right-of-way easement and their real property. "The measure of damages for obstruction of a passway is the diminution in value of the use of the property during the time the obstruction continued," and rental value is a relevant factor in determining the amount of damages. *Wheeler v. Tackett*, Ky., 339 S.W.2d 646, 649 (1960). The trial court properly awarded damages to the Sanors based on rental value for the period Wells obstructed access to the roadway and their property.

For the foregoing reasons, we affirm the order and judgment of the Johnson Circuit Court.

ALL CONCUR.